JOHNSON v. BRIDGEPORT DEOXIDIZED BRONZE & METAL CO.

(Circuit Court, D. Connecticut. February 17, 1905.)

No. 512.

MASTER AND SERVANT—INJURY TO SERVANT—VOLUNTARILY UNDERTAKING DANGEROUS WORK.

Plaintiff, a foreigner of fair intelligence and with considerable knowledge of the English language, was employed as a laborer in defendant's foundry and grinding room. A belt having been thrown off the pulleys in the grinding room, he undertook to put it on while the shafting was in motion, and, in so doing, his arm was caught in a loop in the belt and torn off. The operation was a dangerous one, and required skill which he did not possess. He was not directed to put on the belt by any one in authority over him, but was twice warned against it by a fellow workman after he had commenced. *Held*, that the injury was not due to any negligence of defendant, but solely to that of plaintiff, for which he could not recover.

At Law.

Donald G. Perkins, for plaintiff.
Seymour C. Loomis, for defendant.

PLATT, District Judge. This is a hearing in damages after default, following the state practice, in an action by John Johnson to recover $10,000 damages for injuries which he claims to have suffered from the negligence of the defendant. The case was brought in the state court, and was properly transferred here because of diversity of citizenship. When the matter was brought forward, the plaintiff urged his right to have the damages assessed by a jury, which was refused on October 20, 1903. On November 1 and 2, 1904, at New Haven, I heard the evidence and arguments of counsel, and have since those dates received and examined a copy of the testimony and written briefs. The substance of the complaint is as follows:

Defendant had a machine to which motive power was transmitted by a belt running over pulleys. Plaintiff is a foreigner, with slight knowledge of English, and below the average of intelligence. The belting came off, and defendant ordered plaintiff to put it on again while the shafting was in motion, a thing which the plaintiff had seen done frequently by the engineer and by others. This action required skill, and was attended with great danger, all of which defendant knew and plaintiff did not. Plaintiff obeyed the order, and was seriously injured in so doing. The defendant negligently failed to instruct the plaintiff how to put on said belt and of the danger of said work, and negligently ordered the plaintiff to do the same, and exposed the plaintiff to the damages therein, and, by its negligent acts and omissions aforesaid, caused the plaintiff's said injuries.

I find the following facts: On the 23d day of May, 1900, at about 4 o'clock in the afternoon, the plaintiff's arm was torn from his body in the grinding room of the defendant's factory in Bridgeport, Conn. These are the circumstances in which it happened: The plaintiff was a laborer or helper in and about the foundry and the grinding room, which opened into the foundry. His duties were, in a general way, to carry, clean, and chip castings and shovel sand for the molders, and to help the molders whenever his strength could be of assistance to them. Just prior to the accident he was trying to cut off a gate from one of the castings at a power press which stood in the foundry. The gate was so large that it overtaxed the capacity of the press, and the belt through which power was transmitted to the press was thrown off the upper wheel, which was connected with the main shafting, and also off the fly wheel on the press. The speed of the upper wheel was very great, reaching about 184 revolutions per minute. George W. Mackey was the engineer, and had charge of the engine, boiler, belting, and shafting. He had been so employed for about five years, and was a competent man for the position. Mackey was working on the band saw in the grinding room at the time the belt came off the wheels. He came over and worked the fly wheel by hand, so that plaintiff could cut off the gate, and, while this was being done, told the plaintiff that he ought not to use the press in that way. After the gate had been cut off, Mackey went out into the foundry to get a drink of water. He gave the plaintiff no orders to put the belt back upon the wheels. He remonstrated with him for treating the press as he had done, and said nothing more. The plaintiff did not understand exactly what Mackey said to him, but he took it to be that he should put the belt on. Mackey went away as soon as he had spoken. Plaintiff waited 10 or 15 minutes, hoping that Mackey would come back, because he was not sure of what he said; he had no other work to do, and did not wish to loaf, and so he mounted a ladder which was right at hand, and undertook to put the belt back upon the rapidly revolving wheel. In so doing his arm was caught in the loop of the belt, and before he could remove it he was whirled around the shafting and his arm was torn off. Before he had begun to put the belt back upon the wheel he was twice warned by George Ryan, who was holding a casting at

an emery wheel just across the grinding room, to come down off the ladder.

Plaintiff was a fairly intelligent man, with considerable knowledge of the English language. It is not possible that he could have misunderstood what Mackey said to him. Neither is it possible that he could have failed to hear Ryan's warning. He decided to undertake the dangerous work, and stubbornly proceeded to carry out his design until disaster overtook him. He climbed into danger of his own volition. My view of the case eliminates all discussion as to whether an order from Mackey to put the belt on while the wheel was so swiftly revolving would have made the defendant responsible. I think that such an order would have been within the apparent scope of his authority so far as the plaintiff is concerned, and that secret instructions to him by the master touching the stoppage of the machinery would not have availed. The situation was such that plaintiff had a right to assume that he ought to obey, if the order had been given, but I find as a fact that it was not given, and that ends the matter.

The law is well settled under our state practice that the defendant by suffering a default admits nominal damages, and, after larger damages have been shown by the plaintiff, assumes the burden of disproving his own negligence or of proving the plaintiff's contributory negligence. If he succeeds on either point, the damages are kept down to the nominal point. In the case at bar, I think that the defendant has succeeded in each respect, and the logical outcome is that the plaintiff is entitled to only nominal damages.

Let judgment be entered for plaintiff for $25.